Good morning. May it please the court. My name is Molly Quinn and I represent the appellant Juanita White Shield. We're asking the court to vacate Ms. White Shield's conviction for assault with a dangerous weapon and remand for a new trial or amendment of the written judgment to conform to the oral pronouncement of the restitution award. I'll start with the mistrial issue. The district court erred in denying Ms. White Shield's motion for a mistrial after a government witness testified three times that she said she was on probation at the time of the alleged assault. This government witness was Carson Smith. She testified about a conversation that took place between Ms. White Shield, the witness Ms. Smith, and the alleged victim at a later date at some point after the alleged assault. And Smith was allowed to testify three times that Ms. White Shield said that she was on probation at the time of the alleged assault. This evidence was irrelevant and prejudicial. It suggested that Ms. White Shield was a person who engaged in criminal behavior. It suggested that she was a person who had a criminal record. It suggested that she was a person who had a propensity to commit criminal acts. Now counsel, this testimony was stricken by the judge, right? It was. And the judge gave the instruction, says the jury is not to consider for any purpose, right? He did. Oh, doesn't that cure any problem here? Your Honor, here it does not. And the reason is that the district court's curative instruction was insufficient to cure the error under the facts of this case. It was given only after the witness was allowed to testify to this fact three times, only after Ms. White Shield's defense counsel's contemporaneous objection was overruled by the district court in the presence of the jury. It was only after the government was allowed to testify. How many times was the objection overruled? Three times? Or was there a continued objection? Go ahead. The objection was overruled one time. And our position is that it was sufficiently preserved having received a definitive ruling. But there was one objection in front of the jury. All right. Thank you. And the curative instruction was given only after the government was permitted to finish its direct examination. And under these facts, given the number of times the witness said it, the timing of the overruling of the objection and the striking of the testimony, there's an overwhelming probability that the jury was unable to follow this curative instruction. But, counsel, I thought, didn't the – was there testimony from the victim about the assault with the crowbar? There was testimony about the victim. Okay. And did a special agent testify that the appellant admitted striking the victim with the bar? Yes. And the bar was introduced into evidence? It was. The appellant identified the bar when it was still in the bed of the truck? She did. So, I mean, that's quite a bit of evidence. Does it really – even if that was an error, what – where's the prejudice? The prejudice comes from – it's true that the general outline of events is largely undisputed by the parties. But this evidence that Ms. Whiteshield was on probation went to two key issues before the jury that don't go to the questions Your Honor asked. And those are specifically, did Ms. Whiteshield act in self-defense? And did she act with intent to cause bodily harm, which is an element of the assault with a dangerous weapon, as charged by the government in this case? And there is admittedly competing evidence on the issue of self-defense. Ms. Whiteshield, in her statements to the agent, repeatedly said that the alleged victim here assaulted her first, and she was defending herself. And the alleged victim and Ms. Smith herself had a different story. But these are important questions. These questions of Ms. Whiteshield's intent and whether she acted in self-defense. And we know they're important because both were emphasized in the defense closing argument, and because the jury actually sent a note asking a question about that specific intent element. So we know that these are important issues. And then to get to your question, the probation evidence went directly to these issues. And it's because this evidence, again, suggested that Ms. Whiteshield was a person who had a criminal history, a criminal record, a propensity to commit criminal acts. And then that suggested that she was more likely to be the aggressor in an incident than to have acted in self-defense. And it suggested that she was more likely to be a person who acted with intent to cause bodily harm, rather than by accident or with some lesser mens rea. So because this evidence, these three references to Ms. Whiteshield being on probation at the time of the trial, were for the jury in this case, the district court abused its discretion in denying the motion for a mistrial, and the curative instruction was not sufficient. And any prejudice that remained after that curative instruction is enough to warrant a new trial in this case. If there are no more questions on that issue, I will shift to the second issue. The written judgment is inconsistent with the district court's oral pronouncement of the restitution award in two ways. First, it does not reflect the waiver of the interest requirement. And second, the written judgment is $90 higher than the restitution award that was announced at the sentencing hearing. It's undisputed that the oral pronouncement of the restitution award at the sentencing hearing was $11,893.01 in waiver of the interest requirement. And the box to waive interest is unchecked. And I believe it's undisputed that at least the interest, the written judgment should be amended to reflect the interest, the waiver of the interest requirement. But the written judgment should be amended to reflect the oral pronouncement of the restitution award itself as well. The pronouncement of the restitution award was unambiguous. There was nothing imprecise about it. The district court gave that amount. There's nothing imprecise about that. The district court in giving that amount didn't refer to anything else in the record that would make it confusing or ambiguous or imprecise. The district court did not refer, for example, to the restitution request as set out in the PSR, as set out in the victim impact statement, did not refer to the government's request for restitution, which was additionally $5 off of the restitution award. And the district court's oral pronouncement did not award, for example, X amount to the one entity, Y amount to the other entity, which those added up to a different amount than the total restitution award. So there's nothing imprecise or ambiguous about what the district court awarded at sentencing. And so this is not a case where we can look at the entire record, look at the PSR, try to figure out what the judge maybe asked for, and then verify here. The oral pronouncement was unambiguous and clear. The written judgment said something else. What number did you ask for? What number did the other side ask for? Our side did not address restitution. You never mentioned what at all, a number at all? That's correct. What did the other side really ask for? They asked for, I don't have that right in front of me at the moment, but they asked for $5 less than the restitution award in the judgment. The government did refer to and said, I think that's broken out in the PSR. I've got to ask this respectfully. Our cases generally say the oral pronouncement controls, right? We've got a lot of those cases. But we also have this line of imprecise language cases. Yes. Can you reconcile them? Tell me now. Yes. And I think it goes back to some of the things that I was already talking about. In those cases, there is something about what the district court said that created some sort of ambiguity. And here, there's nothing there. Here, what the district court said was this $11,893.01 amount, and there's nothing internally ambiguous about that. And like I said, the district court didn't, it would have been ambiguous maybe if the district court had said, this number as requested or as reflected in the PSR. This number as reflected in the victim impact statement. This number as requested by the government in this hearing. What did the government request? Did I get that from you? You said $5 less. $5 less. Go ahead. Proceed. Yes, I can get that for the rebuttal. Proceed. I remembered that. Go ahead. And so, I think that makes this case distinguishable from the other cases where there is some sort of ambiguity. The Buck case is the key case talked about by the government in this context. In there, there is definitely an internal ambiguity in what the district court said. In the oral pronouncement, there the government requested a concurrent sentence. The district court judge said, I'm requesting the government's recommendation for a consecutive sentence. And then the judgment came out, and it says, this will be a consecutive sentence. Anything I said to the contrary was erroneous. We don't have any of that here. We don't have anything where the district court judge is referring back, or anything in the statement itself that doesn't make sense. There is no non-existent recommendation to reject, which was present in that Buck case. And there is no kind of clarification at any point by the district court that this was a misstatement. And sort of, I guess, to follow up on Judge Benton's question, really, there was no dispute about the dollars here. So, it's not like the district court was having to resolve some kind of disagreement between the parties, or which victim gets what, or any kind of amount for any particular request. That's correct. And I did want to address the government's argument that plain error review should apply here. And I just wanted to clarify that from our perspective, the error that arose, arose after the judgment was issued. It's not an error that arose in the sentencing hearing. I think that the government's position would be that there was an error in what the district court said out loud. Our position is, again, this is an error that arose after the judgment. And I believe that Rule 51, which says if there's no opportunity to object, then the party is not held to plain error. Because you had no, the defendant had no objection to the dollar amount that was stated. That's exactly right. That if there was a mistake at the sentencing hearing, it was on the other party to object in the moment and request clarification, or within 14 days under Rule 35A. And those things didn't happen here. And even if plain error review did apply, we would believe that we can prevail under that standard. Unless there are further questions now, if I may reserve. Ms. Poole. Good morning again. May it please the Court. Ms. Quinn. Jennifer Poole, representing the United States. Thank you, Mr. Chief Justice. I think it's important to keep in mind how brief these comments were. And therefore, it's helpful to give some context of Ms. Smith's testimony. Ms. Smith testified at length about the assault on the victim. That was the overwhelming majority of her testimony. She testified about the assault that happened outside the liquor store in town. And then as she and the defendant chased the victim, she talked about the second assault that happened on the side of the road. The defendant makes much to do about the fact that the witness testified three times about the defendant's being on probation. But it's important to note that she wouldn't have testified three times about that but for the defendant's objection. Now, to be clear, I am not critical of the defendant objecting to that testimony here. It wasn't proper, but it nonetheless explains why she said it three times. She was very focused on not talking about where this conversation happened. This conversation happened in jail, and the judge instructed her, don't talk about that. And she didn't talk about that. He also instructed her not to talk about the fact that she believed that the defendant was under the influence of methamphetamine. She didn't talk about that. So he also said, don't talk about the probation. She did let that slip, however, when the prosecutor asked her, tell me what the defendant said to you when you had occasion to encounter her. At that point, she said, the defendant told me, it was part of the statement, the defendant told me she was on probation, that she effed up and that she grabbed the pole. Before she could finish that statement, however, the defendant objected. But over the defendant's objection, the district court allowed her to finish that statement. So unfortunately, she didn't just pick up where she dropped off and said, the defendant messed up and I picked up, and she said she picked up the pole. And fortunately, she said, the defendant was on probation and so forth. In an effort to move on, the prosecutor said, is this the sum of the statement? And she said yes, and she repeated it. So this took place in a matter of moments. As I said, most of the testimony was about the assault on the victim on the day in question. And there was just a few moments that were dedicated to this conversation that happened at the jail, although there was no mention of the jail. The court, this court, has said repeatedly that the district court in these situations is in the best position to determine the prejudicial effect of improper testimony. And in this case, the judge handled the situation in a textbook fashion. He immediately excused the jury, and they had a conversation about what was said. At that point, he denied the defendant's motion for a mistrial, because he determined this was not the sort of evidence that would lead one to believe that she picked up a pole and hit somebody. And this is a district court judge that I would submit has over 100 trials under his belt. He's been on the federal bench for over 21, 22 years, so he's a very experienced trial judge. And he determined that, listen, he determined that in the midst of this entire trial, that this was not so problematic that we can't remedy it with a curative instruction. And that's exactly what he did. He brought the jury back in, he struck the testimony, he admonished the jury not to consider evidence of the defendant being on probation. Now, in preparing for this argument, I read through the court's case law on this issue, and I was struck at how minor these comments were compared to other cases where this court has upheld the district court's denial of a motion for a new trial. There were cases where witnesses have talked about homicide investigations, talked about seeing mugshots of the defendants. In those cases, a remedial instruction was given, and this court upheld the district court's denial of a motion for a new trial. The most analogous case that I could find was probably the U.S. v. Fedders case. That was a case that was authored by you, Judge Benton. And in that case, there were three separate witnesses that testified about the defendant's criminal history. The first witness testified that the last time that he saw the defendant was in lockup. The second witness was a booking agent who said that he had a lot of experience with the defendant. And the third witness was a narcotics agent that made reference to some previous criminal activity. But despite all of that testimony, which I would argue is certainly more problematic than what's at issue in this case, despite that fact, this court determined that all of the comments that were made about the defendant's criminal history were fleeting and remedied by the court. What about the argument that it really goes to the self-defense, that the concern is rather narrow, that it goes to the credibility of her position on why she did what she did as opposed to whether this all happened? Well, I would submit to you there was almost no evidence of self-defense in this case, Your Honor. In fact, at one point, the defense attorney asks for a self-defense instruction, and the judge says, hold on, I'm not going to provide that until I see some evidence of it, at which point the prosecutor says, I don't object. So the issue was resolved. But to your point, the only evidence of the self-defense was a recording by the defendant. There were two statements. The defendant didn't testify at trial. The defendant's statements came in. The first statement, she denied the assault. She denied that she even used a crowbar. She denied that six times. This assault didn't happen the way that the victim said it did. In the second time she was interviewed, which I think was about an hour and a half after the first interview, she said, yep, I did pick up this crowbar and I did hit this victim with it, although she claims, of course, that it was a mutual combat of sorts. But overwhelming evidence that this defendant had the necessary intent to commit bodily harm in this case. It's hard to say that you don't intend to commit bodily harm when you pick up a crowbar and you hit somebody with it with force four or five times after punching that victim. In this case, that evidence consisted of the law enforcement found this victim on the road all bloodied, a traveler. Two, I think, individuals have called 9-1 and said there's this individual sitting on the road. Law enforcement arrives on the scene and his testimony was she was covered in blood from the top of her head to the tip of her toes. That was his testimony. Meanwhile, the defendant has no defensive wounds on her. The victim's testimony, of course, that she was assaulted by the defendant on the side of the road with the crowbar. And then, of course, Carson Smith's testimony, which I think was the most impactful in this case, because I believe she was the only one who wasn't under any influence at the time. But she testified in specific detail about what happened in this case. She said that the defendant was just full of rage when she witnessed the victim with her husband outside the liquor store. She went over to the vehicle. She punched her. They took off in the vehicle. They followed the defendant and Ms. Chase together. Sorry, Smith. I'm getting the names confused. Smith doesn't know the victim, doesn't know the defendant that well either. But she testified that they got in this vehicle. They followed the victim and the defendant's husband, after which the defendant dragged or removed the victim from the vehicle, hit her. And she even said that this victim was doing nothing. She said, I yelled at her. I pleaded with her to stand up for herself. And she didn't. At that point, she said, the defendant got frustrated, went to the bed of the truck, grabbed the crowbar, and started hitting the victim with force. And she said the victim was doing nothing. She didn't try to stop it. The only thing she did was put her arms up in some sort of self-defense action, or in an effort to protect herself. So again, the court is in the best position to measure the effect. Counsel, what was the case you mentioned a moment ago? Our opinion? The Fetters case? Fetters? Yes. Is that in your brief? I believe it is. If it's not, it was written by Judge Benton. I do recall that. Is it with an F? Yes. I don't see it in the index of any of the briefs. Go ahead. You could send us a 28-J letter with it. Certainly. I apologize. I didn't draft the brief. What's the citation? Do you have the citation? I have it right over here. No, that's okay. If you'll just follow up with the letter as mentioned by Judge Benton. Will do. Thank you. So again, when viewed in the context of this trial, this very experienced trial judge determined that this was the type of statement that was not so problematic that couldn't be cured with an instruction. But nevertheless, to the extent that there was some residual prejudice that remained, it's our position that it was harmless error based upon the report. As to the second issue raised by defendant regarding restitution, it's clear that what is reflected in the transcript today is erroneous for one of two reasons. Either the judge misspoke when he ordered restitution, the specific amount, or alternatively because the court reporter transposed the numbers when she recorded the proceedings. Has anyone checked to see whether the audio, whether it matches? No. Is there a recording? Typically there is not a recording. Yeah. It's possible there may be, but typically in our district there is not. But in any event, it's a clear mistake. Indeed, as Ms. Quinn has said, this is a written judgment and a written judgment that the oral pronouncement typically controls. But this court has also said that where, as it is here, the written sentence is consistent with the court's intent during the hearing that this court may treat the written judgment as operative. So here I think there can be no question what the court's intent was. There were two claims for restitution. There was a claim from the Department of, I think it was Human Services, for $1,078. And there was a second claim for $10,983. For a total of $11,983. And that's the PSR and not objected to by anybody, right? That is right. And that was what was reflected in the written judgment. And is that the amount that you asked for? Or was that $5 off? What did the government ask for? I have to apologize. My recollection was that there was no specific amount. But I can't be certain. What did you say that North Dakota DHS asked for? The North Dakota Department of Human Services requested $1,078. And the other one? It was for CHS in the amount of $10,983. I believe. No, your brief says 10,904. And I think that's what the PSR says too. Yes, that's right. And the cents make an extra dollar. Almost exactly. What are the odds of that? 39 plus 62. In any event, the addition in the PSR is correct. And the addition that's set forth in the, well not set forth, but that you arrive at in the written judgment is correct. What the court said, and it's clear, he either transposed the numbers or the court reporter transposed the numbers. There's no, there's no connection to the facts in this case. There's no way you can get to that number. Now, I would agree that when you say that number, it's clear, right? When I say the car is red, it's very clear I'm saying the car is red when in fact it isn't. That's why you look at the intent, you look at the entire pronouncement of sentence, and you look at the entire sentencing hearing, and you can look at the PSR, which was not objected to by either party. But again, in any event, it was an error. We don't really have the context of ambiguity. It's a number that wasn't referenced. The district court didn't reference the PSR, didn't reference anyone's argument. And I guess, you know, it seems like everybody thinks something happened, juxtaposition of a number, something. But I don't, I wonder about the next case, right? Well, that was just a mistake. How are we going to know when $90 is a mistake or $4,000 is a mistake or juxtaposition? I'm kind of, I'm trying to figure out how we know this one is an error, and other than the fact that there's this sort of juxtaposition of numbers that maybe would explain it. But there's nothing else here on this record that would say that the judge was confused or referencing something erroneously. Well, it's a unique situation, right? Because it makes sense when the numbers are not transposed here, right? So I don't think you're going to see this situation. Well, when you see this situation, you're going to look at the sentencing, you're going to look at the transcript, you're going to look at the PSR, you're going to look at the hearing and you're going to say, okay, what happened? There's no way you get to the number that the district court, or there's no way you get to the number that's reflected in the transcript of the proceedings. There's no explanation for it. So when there's no explanation for it, then you start looking. So is that the rule if there's no, I'm just trying to figure out what, because our rule is if it's the oral pronouncement is different than the written judgment, you go with the oral pronouncement, unless there's some kind of ambiguity and you need some sort of clarification. And I kind of feel like we're not in that world. And I'm just trying to figure out a rule that isn't just, oh, well, we know this one is a mistake. I just don't know what rule, how we would write that up other than, you know, it's an error and we just all called it that. Well, I think in the Mays decision, I think it was the Mays decision and the Buck decision, both, and let me see, but there the court said very clearly that if the written sentence is consistent with the intent of the judge, and I don't think you can look at this and say that the judge intended that $90 difference, because again, there's no way you get to that fact. So if it's clear what the judge intended to do, you can treat that written sentence as operative. The court has said that in Mays, and that was as recent as 2021. But again, in any event, it's an unpreserved error that was not preserved, Your Honors. Well, I see that my time has expired. So if there are no further questions, I will conclude by requesting that the district court, excuse me, I will conclude by requesting that this court affirm the district court's denial of the mistrial and affirm the district court's written judgment imposing restitution in the amount set forth in the PSIR. I would agree, however, that the... Limited remand on the interest. Limited remand for the purpose of checking the appropriate box, which would waive interest on the restitution, because again, that was very clear. That's what the court intended. Thank you, counsel. Ms. Quinn. Thank you. I'd like to start by kind of clarifying some of the matters relating to the restitution issue. I do now have the numbers in front of me. The government's request, at least as reflected in the transcript on this, on page 18 is $11,978.01. So it's exactly five bucks off. Exactly. Five bucks. To the penny. Five dollars off the written judgment. Right. Sure. Five bucks to the penny. Go ahead. Yes. And so the government's request orally at sentencing, as reflected in the transcript, is that $11,978.01. The district court's oral pronouncement, $11,893.01, and the written judgment, $11,983.01. And it's true the written matches the PSR. It does. Thank you. And Judge Kelley, I wanted to go to your question about whether this might have been an error in the transcription itself. And I don't have anything on the record for this, but I can tell the court that we did have a staff member from our office reach out to the court reporter. We did not listen to the recording ourselves, but we did request that the court reporter listen and ensure that we weren't repeating a scrivener's error. But that's all I have on that. I did not do that in full candor for the government's request on page 18. So we did not listen to the recording ourselves. We did make an effort to ask the court reporter to double-check that. And then I'd like to shift to the mistrial issue. On the point about Carson Smith only said this three times because of the defense objection, I do disagree with that. There was only, as we talked about earlier, one defense objection. And then she said it two more times after that. And I don't think this witness repeating this statement over and over again after a defense objection is the fault of the defendant. And this court has said that we look at the context in which the error occurs when evaluating the motion for mistrial. And that should not cut against Ms. Whiteshield in this matter. And then I did want to briefly address the Fedders case addressed in Ms. Poole's argument. And I think one key distinction from my notes on that case is that in that case, there was either no defense objection to that testimony or the district court, as characterized in the opinion, immediately rectified the error and struck that testimony. And some of the differences that we have here, again, are this one witness said this three times. Defense objection is overruled in front of the jury. And there is no curative instruction until after there's a break and the jury is brought back in. So that would be a distinction from that case. And some of the others where there isn't necessarily this repeated statement of the prejudicial statement and then an overruling of the objection and the curative instruction only comes later. Do you have the citation to the Fedders case? I believe I did cite it in the opening brief. You cited it. Yes, for the proposition of fleeting comments. And I believe that is the same case. And I wanted to go to the discussion about harmless error. This error, the denial of the motion for mistrial, was not harmless. There was some discussion about self-defense and potential evidence against Ms. White Shield's claim of self-defense. And I'd like to talk about this evidence also went to the other issue of specific intent under assault with a dangerous weapon. And we know that that was a concern for the jury because they sent a note to the judge asking to talk about it. They sent a note saying, we want to know what's the difference between this greater offense, assault with a dangerous weapon, and the lesser included offense, simple assault. And then they put intent to do bodily harm. So we know that that is an important question for the jury in this case because they told us that with the note. In this evidence, for the same reasons it's prejudicial and the same reasons that it goes to self-defense, that it goes to Ms. White, it suggests that she's a person with a criminal propensity or propensity to commit criminal acts or more likely to have acted with a bad intent. That evidence was prejudicial on that important fact as well. We would ask the Court reverse and remand for a new trial or amendment of the written judgment to conform to the oral pronouncement. Thank you. Thank you both for your arguments. Case number 23-1192 is submitted for decision by the Court. Ms. Ageef. The last case, excuse me. The last case for argument 231627, United States v. Alexander Corneal. Mr. Glaser.